IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

M.M.B.B., on behalf of herself and
N.B., her minor child,

     Plaintiff,

        v.

UNITED STATES OF AMERICA,

     Defendant.

CIVIL ACTION FILE
NO. 1:24-CV-5031-TWT

## OPINION & ORDER

This is a Federal Tort Claims Act case. It is before the Court on the
Government's Motion to Dismiss. [Doc. 20]. The Plaintiffs have also filed a
Motion for Enlargement of the Page Limit [Doc. 23] for their response to the
Government's Motion to Dismiss. For the following reasons, the Plaintiffs'
Motion for Enlargement of the Page Limit is GRANTED and the Government's
Motion to Dismiss is GRANTED in part and DENIED in part.

## I. Background

This action arose out of the U.S. Custom and Border Patrol's ("CBP")
expulsion of the Plaintiff M.M.B.B ("Plaintiff Mother") and her newborn U.S.
citizen son, N.B. ("Plaintiff Son"), two days after N.B.'s birth. (Compl. ¶ 1). As
a response to the COVID-19 pandemic, in March 2020, the U.S. Department of
Health and Human Services ("HHS") issued an interim rule under 42 U.S.C.
§ 625 allowing the CDC to suspend entry into the United States of persons who
may present a risk of communicable disease transmission. (*Id.* ¶¶ 12-13). The

CDC then issued an order (the "Title 42 Order") permitting the Department of Homeland Security ("DHS") to suspend the introduction of noncitizens without travel documents or whose entry was otherwise contrary to the law who were seeking to enter the United States at or between ports of entry. (*Id.* ¶ 14). The Title 42 Order did not apply to U.S. citizens or those who, based on a determination by a DHS officer, "should be excepted based on the totality of the circumstances, including consideration of significant law enforcement, officer, and public safety, humanitarian, and public health interests." (*Id.* ¶ 15); (Notice of Order Under Sections 362 and 365 of the Public Health Service Act, 85 FR 17060-02, (Mar. 26, 2020) ("Title 42 Order")). On September 11, 2020, the CDC published a final rule that specifically authorized "physically expelling from the United States some or all" persons subject to the rule. (Compl. ¶ 17); (Suspension of the Right to Introduce and Prohibition of Introduction of Persons Into United States From Designated Foreign Countries or Places, 85 FR 56424-01, (Sept. 11, 2020).

CBP issued guidance to its agents on how to implement the Title 42 Order. (*Id.* ¶ 21); (Def.'s Motion to Dismiss, Ex. 2 ("COVID-19 CAPIO") [Doc. 20-2] at 1).[1] This guidance instructed CBP agents to apply the Title 42 Order

---

[1] The Government attached the COVID-19 CAPIO to its Motion to Dismiss. The Court may consider the document because the Plaintiffs references it in their Complaint, it is central to their claims, the Government attached it to the Motion to Dismiss, and the Plaintiffs have not disputed the document's contents or its authenticity. *Day v. Taylor*, 400 F.3d 1272, 1276

to noncitizens seeking to enter the United States from Mexico at or between a port of entry if they were subject to travel restrictions or lacked travel documents. (*Id.*). The guidance also instructed that agents were not to take the personal property of a person who was expelled and that, if a noncitizen stated a "reasonably believable claim of torture in the country to which [she is] being expelled," the agent could not expel her without first referring her to an asylum officer with U.S. Citizenship and Immigration Services ("USCIS") for a fear screening. (Compl. ¶¶ 21-22); (COVID-19 CAPIO at 4).

On or about July 1, 2021, the Plaintiff Mother entered the United States near Piedras Negras, Mexico after leaving her native Honduras. (*Id.* ¶ 29). The Plaintiff Mother, who was eight months pregnant, was fleeing persecution in Honduras with her mother and two sisters. (*Id.*). After crossing the border, the Plaintiff Mother and her family encountered a CBP agent and told the agent that they were seeking asylum in the United States. (*Id.* ¶ 30). They were taken to a CBP facility where the Plaintiff Mother was asked to step out of the vehicle before the vehicle departed with her mother and sisters still inside. (*Id.*). At the facility, the Plaintiff Mother asked to see a doctor and told CBP agents that she was carrying a high-risk pregnancy after she began experiencing pain in her knees, legs, and back. (*Id.* ¶ 32). The agents did not respond. (*Id.*). Hours later, CBP agents drove the Plaintiff Mother to the

---

(11th Cir. 2005).

international bridge between Eagle Pass, Texas and Piedras Negras, Mexico and left her there. (*Id.* ¶ 33). The Plaintiff Mother remained on the bridge for several hours before she went into labor, at which point she returned to the United States by crossing the Rio Grande river. (*Id.* ¶ 34).

The Plaintiff Mother encountered another law enforcement officer when she crossed the river, and told the officer she was in labor. (*Id.* ¶ 35). An ambulance arrived and the Plaintiff Mother was taken to a hospital, where she gave birth. (*Id.* ¶¶ 35-39). After the birth, the doctors treating the Plaintiff Mother expressed concern about her weakness due to anemia, advising her not to breastfeed her son and explaining that she would need to be hospitalized for several days. (*Id.* ¶ 41). However, CBP agents insisted she be discharged against the doctors' recommendations and before the Plaintiff Mother could obtain her son's U.S. birth certificate. (*Id.* ¶ 42). The Plaintiff Mother was discharged on July 4 with postpartum care supplies for herself as well as diapers and formula for the Plaintiff Son. (*Id.* ¶ 43). CBP agents then took the Plaintiffs to a different facility where the bag of supplies she was given was taken from her. (*Id.* ¶¶ 44-45). The Plaintiff Mother sat with her son for hours in a waiting area with no postpartum supplies to care for herself, no food or water, and no formula for her son. (*Id.* ¶ 45). At the facility, the Plaintiff Mother asked an agent for information on obtaining her son's birth certificate and was given a phone number to call her consulate, but when she later called the

number, it was not in service. (*Id.* ¶ 46). When the Plaintiff Mother was later taken to a vehicle, she asked for the bag of hospital supplies and was told that it had been lost. (*Id.* ¶ 47). The agents then drove the Plaintiffs to the international bridge, where the Plaintiff Mother again told the agent that she was afraid to return to Mexico or Honduras and stated her intent to seek asylum in the United States. (*Id.* ¶ 48). The Plaintiffs were left on the bridge with nothing but the clothes they were wearing and a second shirt for the Plaintiff Son. (*Id.*). With assistance from a passerby, the Plaintiff Mother was ultimately able to obtain an attorney who made a parole request on her behalf. (*Id.* ¶¶ 49-51). The Plaintiff Mother was paroled into the United States and the Plaintiff Son admitted as a citizen on July 8, six days after her son was born. (*Id.* ¶¶ 51-52).

The Plaintiffs filed this lawsuit, bringing seven claims under the Federal Tort Claims Act ("FTCA"). The claims are as follows:

- **Count I**: False Imprisonment (Plaintiff Son)

- **Count II**: False Imprisonment (Plaintiff Mother)

- **Count III**: Negligence: Expulsion Without First Seeking USCIS Review of Fear Claims (Plaintiff Mother)

- **Count IV**: Negligence: Expulsion to Locations or Into Conditions Which Placed Plaintiffs' Health and Safety at Risk (Both Plaintiffs)

- **Count V**: Negligence: Failure to Secure Proper Medical Treatment for Plaintiff Mother While in Border Patrol Custody (Plaintiff Mother)

- **Count VI**: Negligence: Failure to Provide Information Regarding Obtaining a U.S. Birth Certificate (Both Plaintiffs)

- **Count VII**: Intentional Infliction of Emotional Distress (Both Plaintiffs)

The Government has moved to dismiss all seven counts under various exceptions to the FTCA, arguing that those exceptions deprive the Court of jurisdiction. [Doc. 20].

## II.  Legal Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. FED. R. CIV. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (quotation marks, citation, and brackets omitted). On a facial attack, therefore, a plaintiff is afforded safeguards like those provided in opposing a Rule 12(b)(6) motion. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation

marks omitted). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999) (quotation marks and citation omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); FED. R. CIV. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon

which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

### A. Background on the FTCA

Generally, the United States, "as a sovereign entity, is immune from suit without the consent of Congress." *Shivers v. United States*, 1 F.4th 924, 928 (11th Cir. 2021) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). One such instance of Congress waiving sovereign immunity is the FTCA. "Through the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) (citations omitted). This waiver, however, is not absolute. Congress included several statutory exceptions in the FTCA "which serve to block the waiver of sovereign immunity that would otherwise occur under the FTCA." *Id.* These exceptions "'must be strictly construed in favor of the United States,' and when an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." *Id.* at 1322 (quoting *JBP Acquisitions, LP v. United States ex rel. FDIC,* 224 F.3d 1260, 1263-64 (11th Cir. 2000)); *see Smith v. United States*, 14 F.4th 1228, 1231 (11th Cir. 2021) ("[C]ourts are required to strictly observe all terms and conditions that accompany a waiver of sovereign immunity. Any ambiguities

are thus interpreted in one direction—in favor of immunity." (quotation marks and citation omitted)).

The Government points to several possible statutory exceptions that may bar the Plaintiffs' claims, arguing that the Court lacks subject matter jurisdiction. The Government also argues in the alternative that the Plaintiffs fail to state their claims under Rule 12(b)(6). The Court will address these arguments in turn.

## B.  The Discretionary Function Exception[2]

The Government first argues that all of the Plaintiffs' claims ought to be dismissed because the discretionary function exception applies and bars them. The FTCA provides that its waiver of sovereign immunity "shall not apply to . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded

---

[2] On July 7, 2025, the Court ordered the parties to brief the potential impact of *Martin v. United States*, 145 S. Ct. 1689 (2025) on this matter. In *Martin*, the Supreme Court overturned Eleventh Circuit precedent that prevented application of the discretionary function exception to, *inter alia*, claims of false imprisonment by law enforcement officers. *Martin*, 145 S. Ct. at 1697-1700. In its briefing, the Government argues that the discretionary function exception now applies to the Plaintiffs' false imprisonment claims; thus, the Court will analyze this exception as to all of the Plaintiffs' claims.

in social, economic, and political policy through the medium of an action in tort." *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020) (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)). A discretionary function exception defense presents a factual challenge to the Court's subject matter jurisdiction. *OSI, Inc. v. U.S.*, 285 F.3d 947, 951 (11th Cir. 2002).

A two-part test determines whether the discretionary function exception applies. First, "a court must determine whether the conduct challenged by the plaintiff was 'discretionary in nature'—that is, whether it involved 'an element of judgment or choice.'" *Shivers*, 1 F.4th at 929 (quoting *Gaubert*, 499 U.S. at 322). "[W]hen a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," then the conduct is not discretionary because "the employee has no rightful option but to adhere to the directive." *Swafford v. United States*, 839 F.3d 1365, 1370 (11th Cir. 2016) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Second, "a court must evaluate 'whether that judgment [or choice] is of the kind that the discretionary function exception was designed to shield.'" *Shivers*, 1 F.4th at 929 (quoting *Gaubert*, 499 U.S., at 322-23); *see Swafford*, 839 F.3d at 1370 ("[T]he discretionary-function exception 'protects only governmental actions and decisions based on considerations of public policy.'" (quoting *Berkovitz*, 486 U.S. at 537)). To that end, "[w]hen established

governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in [that] policy when exercising that discretion." *Swafford*, 839 F.3d at 1370.

### 1. Counts I, II, & III – False Imprisonment of the Plaintiffs and Negligence for Expulsion of the Plaintiff Mother Without a USCIS Fear Screening

In Counts I & II, the Plaintiff Mother brings false imprisonment claims on her own behalf as well as the Plaintiff Son on grounds that CBP agents "unlawfully and intentionally" confined them from the time of the Plaintiff Son's birth through the entirety of their expulsion to Mexico. (Compl. ¶¶ 56, 63-65). The Plaintiff Mother argues that her expulsion was unlawful because she expressed a fear of "physical injury, torture, or death" if returned to Mexico and, as to her son, because he was a U.S. citizen. (*Id.* ¶¶ 58, 63). In Count III, the Plaintiff Mother brings a negligence claim based on allegations that "Border Patrol agents twice expelled [her] to Mexico without first referring her to USCIS for a fear screening." (Id. ¶ 71). The Plaintiff similarly contends that because she expressed a fear of being returned to Mexico or Honduras, the border patrol agents had a statutory duty to refer her to USCIS for a fear screening. (*Id.* ¶¶ 48, 70).

11

### a. First *Gaubert* Prong—Whether the Actions Were Discretionary

The Plaintiff Mother argues that the discretionary function exception does not apply because the COVID-19 CAPIO mandated that when an individual claims fear of torture in the country where he or she will be sent, then USCIS must assess that person's fear claim. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, at 8); (COVID-19 CAPIO, at 4); (COVID-19 Response Guidelines, [Doc. 20-3], at 2). According to the Plaintiff Mother, because the CBP agents did not follow this agency protocol, their actions were not discretionary, as they failed to comply with established regulations. (Pl.'s Brief in Opp'n to Def.'s Mot. to Dismiss, at 9).

The Court disagrees with this characterization. Upon review of the COVID-19 CAPIO and CBP guidance at issue, CBP agents possess considerable latitude in handling immigration situations. For example, the section at issue here reads: "Alien[s] who affirmatively and plausibly claim a reasonable fear of torture in the country to which they will be sent will be segregated and referred to U.S. Citizenship and Immigration Services for assessment." (COVID-19 Response Guidelines, at 3). Discretion is baked into this directive. When faced with an alien claiming fear of torture, CBP agents must decide if the person stated the fear affirmatively and whether the fear claim is plausible and reasonable. Only then does the guidance mandate a fear assessment. So here, the agent that interacted with the Plaintiff had to make

a discretionary judgment call about whether she "affirmatively and plausibly [claimed] a reasonable fear of torture" to determine if she required a fear assessment or if the Title 42 Order applied to her. (*Id.*). Similarly, as to the Plaintiff Son's claim of false imprisonment, the COVID-19 CAPIO advised agents to make efforts to keep family units together at all times. (COVID-19 CAPIO, at 2). The Plaintiff Mother did not allege that she asked for her U.S. citizen-son to remain in the United States in CBP custody when she was expelled to Mexico; to the contrary, the facts alleged indicate that she intended to care for her son herself. And under Rule 12(b)(1), the facts are not construed in the Plaintiffs' favor. *Scarfo*, 175 F.3d at 960-61; *OSI, Inc.*, 285 F.3d at 951. In fact, the Court is obligated to construe application of the discretionary function exception in the Government's favor. *Swafford*, 839 F.3d at 1369-70. Thus, the CBP agents' actions of expelling the Plaintiff Son with his mother represented an exercise of their discretion to keep their family unit together. For all three counts, these actions are sufficient to satisfy the first prong of the *Gaubert* test: the agents' actions involved discretion.

### b. Second *Gaubert* Prong—Policy Considerations

Next the Court must determine whether the conduct at issue falls under the type of action that the discretionary function exception is intended to shield. *Shivers*, 1 F.4th at 929. "[I]n the context of border security, courts recognize that law enforcement decisions regarding immigration and criminal

investigations and arrests are clothed in public policy considerations." *Cantu Silva v. United States*, 110 F.4th 782, 790 (5th Cir. 2024) (quotation omitted). Judge Atlas of the Southern District of Texas aptly summarized the important policy considerations at issue with these types of immigration decisions:

> CBP is a unified federal law enforcement agency designed as the nation's first comprehensive border security agency focused on securing [the United States'] borders while facilitating legal trade and travel. CBP is charged with enforcing hundreds of United States laws and regulations. On a typical day, CBP must process over one million people traveling through the United States and may apprehend over one thousand individuals between U.S. ports of entry. The Border Patrol is more specifically tasked with detecting and preventing illegal entry of aliens into the United States . . . . Operating with limited resources, [immigration authorities] must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens."

*Tsolmon v. United States*, 2015 WL 5093412, at *11 (S.D. Tex. Aug. 28, 2015), *aff'd*, 841 F.3d 378 (5th Cir. 2016) (quotation marks and citations omitted). Decisions such as the ones at issue here—whether to assess the Plaintiff Mother's fear claim or subject her to the Title 42 Order and whether to separate the Plaintiffs—clearly implicate choices "grounded in social, economic, and political policy." *Gaubert*, 499 U.S. at 323. Further, the fact that there was specific agency guidance that gave CBP agents discretion on these issues demonstrates that this decision is grounded in policy. *Id.* at 324 ("[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the

regulation involves consideration of the same policies which led to the promulgation of the regulations.").

Perhaps the agent made the wrong choice. But that is not the relevant inquiry for whether the discretionary function exception applies; the Court must focus on the *types* of decisions being made, not on the decisions themselves.[3] *See Shivers*, 1 F.4th at 928 ("The upshot of § 2680(a) is that when the United States's performance of a 'function or duty' involves discretion, the fact that the discretion was misused or abused in any way does not lead to liability for the U.S. Treasury."). Case law and general wisdom indicate that decisions dealing with immigration decisions such as the ones at issue here are

---

[3] The Plaintiff urges the Court to adopt the so-called "negligent guard theory." This theory holds that "when officials perform discretionary duties in a lazy, careless, or inattentive" manner" then their actions "fail the policy prong of the [discretionary function exception] analysis because the specific actions simply cannot be said to be based on the purposes that the regulatory regime seeks to accomplish" even though "a governmental agent's actions may seem to be discretionary." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, at 14 (quotation marks and citations omitted)). The Court declines to adopt this judicially created doctrine as it ignores the plain language of the FTCA which stipulates that the discretionary function exception applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Further, no court in the Eleventh Circuit has adopted this theory. *See Dickey v. United States*, 2024 WL 5515374, at *6 (N.D. Fla. July 19, 2024) ("The Eleventh Circuit, however, has never adopted the negligent guard theory. Dickey also has not offered any persuasive argument for the District Court to adopt this theory."), *report and recommendation adopted in part, rejected on other grounds*, 2025 WL 959924 (N.D. Fla. Mar. 31, 2025).

heavily grounded in policy considerations.

After careful consideration, the Court finds that Counts I, II, & III satisfy both prongs of the *Gaubert* test, and thus, the discretionary function exception applies. These claims are barred, and the Court does not have jurisdiction to consider them. *See Swafford*, 839 F.3d at 1369-70 (noting that "if [the discretionary function exception] applies, federal courts lack subject-matter jurisdiction over the claims." (citations omitted)).

### 2. Count IV – Negligence (Expulsion to Locations or into Conditions Which Placed Plaintiffs' Health and Safety at Risk)

In Count IV, the Plaintiffs bring a negligence claim premised on the CBP agent's confiscation of the Plaintiff Mother's hospital supplies and their expulsion to Mexico postpartum and without those basic care supplies. (Compl. ¶¶ 76-79). They allege that the CBP agents "failed to act with ordinary care and breached their duty of care" with regard to these actions. (*Id.* ¶ 77).

#### a. First *Gaubert* Prong—Whether the Actions Were Discretionary

The Government characterizes the Plaintiffs' claim as derivative of Count III—that the Plaintiffs are again challenging the fact of their expulsion to Mexico—and argues that the discretionary function exception should apply for the same reasons as to Counts I through III. (Def.'s Mot. to Dismiss, at 23, 15-22). The Court disagrees with this characterization. The crux of the Plaintiffs' claim is that the CBP agents had a duty "not to lose or misplace

16

Plaintiffs' belongings as well as a duty to return prior to expulsion vital necessities for Infant Plaintiff." (Compl. ¶ 76). But when a federal policy specifically prescribes a course of action for an agent to follow, the conduct is necessarily not discretionary. *Swafford*, 839 F.3d at 1370. Here, the COVID-19 CAPIO specifically states that CBP agents were not to take a migrant's property. (COVID-19 CAPIO, at 2 ("Property is not to be taken into custody.")). This directive leaves no wiggle room for CBP agents to act differently. Thus, the CBP agents' actions of taking the Plaintiffs hospital supplies and failing to return them were not discretionary, so the discretionary function exception does not bar Count IV. *Shivers*, 1 F.4th at 929.

### 3.  Count V – Negligence (Failure to Provide Proper Medical Treatment)

In Count V, the Plaintiff Mother brings a negligence claim based on the CBP agents' failure to provide medical care after she asked to see a doctor during her first detention. (Compl. ¶¶ 82-85). The Plaintiff Mother argues that her requests for medical care and complaints of significant pain were ignored. (*Id.* ¶ 84). In response to the Motion to Dismiss, she argues that the CBP National Standards on Transport, Escort, Detention, and Search ("TEDS") required CBP agents to provide her "appropriate medical care" once she reported pain and requested a doctor. (Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 39); [Doc. 20-9 ("TEDS") § 4.3].

17

### a. First *Gaubert* Prong—Whether the Actions Were Discretionary

"[U]nless a 'federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard,' it will be presumed that the particular act involved an element of judgment or choice." *Zelaya*, 781 F.3d at 1330 (citation omitted). The TEDS section cited by the Plaintiff Mother provides that "[o]bserved or reported injuries or illnesses should be communicated to a supervisor, documented in the appropriate electronic system(s) of record, and appropriate medical care should be provided or sought in a timely manner." (TEDS § 4.3 ). Contrary to the Plaintiffs' position, this policy does not "specifically prescribe a course of action" because it leaves to the agents' determination what appropriate medical care might be for a reported injury. In other words, a CBP agent could determine that appropriate medical care for a given ailment was no medical care at all. This determination necessarily involves an element of judgment, so the first *Gaubert* prong is satisfied. *Shivers*, 1 F.4th at 929.

### b. Second *Gaubert* Prong—Policy Considerations

The Court finds the decision a CBP agent must make regarding appropriate medical care is one that the discretionary function exception was designed to shield. *Id.* As the Court found with Counts I, II, and III, the fact that the TEDS give CBP agents latitude to determine what medical care is appropriate to provide a detainee demonstrates that this type of decision is

18

grounded in policy. *See Swafford*, 839 F.3d at 1370. The Plaintiffs have not attempted to rebut this presumption as to Count V. *See Gaubert*, 499 U.S. at 324 (noting that the existence of a regulation granting an employee discretion "creates a strong presumption" that the act authorized by the regulation involves consideration of the policies underlying the regulation's enactment). And although the Plaintiffs argue that the CBP agent erred in exercising his discretion by failing to provide any medical care at all, the Court's inquiry here focuses on the type of decision being made rather than the actual decision made in this particular case. *See Shivers*, 1 F.4th at 928. For these reasons, the Court finds that Count V satisfies both prongs of the *Gaubert* test, and thus, this claim is barred by the discretionary function exception. Accordingly, the Court lacks jurisdiction to consider it. *See Swafford*, 839 F.3d at 1369-70.

### 4. Count VI – Negligence (Failure to Provide Information on Obtaining U.S. Birth Certificate for Plaintiff Son)

In Count VI, the Plaintiffs bring a third negligence claim based on a CBP agent's failure to provide accurate information to the Plaintiff Mother on how to obtain the Plaintiff Son's U.S. birth certificate. (Compl. ¶¶ 88-91). They allege that the CBP agent had a duty to provide this information that was breached when the agent provided the Plaintiff Mother with a consulate phone number that was not in service. (*Id.* ¶ 89-90). The Government makes a blanket assertion that the discretionary function exception also bars Count VI, but the

Court disagrees.

### a. First *Gaubert* Prong—Whether the Actions Were Discretionary

The CBP agent's act of providing an out-of-date phone number easily satisfies the first *Gaubert* prong because, to the Court's knowledge, there is no federal statute, regulation, or policy requiring agents to provide a working consulate phone number to a detainee. *Zelaya*, 781 F.3d at 1330 (noting that absent a statute, regulation, or policy specifically so providing, "it will be presumed that a particular act involved an element of judgment or choice."). It is clear that the CBP agent chose to assist the Plaintiff Mother by providing the consulate phone number.

### b. Second *Gaubert* Prong—Policy Considerations

Nonetheless, the second *Gaubert* prong is not satisfied because, even assuming the CBP worker here knew the phone number he provided was not in service, the decision to provide the phone number cannot be said to be one "grounded in considerations of policy." *Id.* Indeed, the purpose of the discretionary function exception is to "prevent judicial second-guessing of legislative and administrative decisions," *see Foster Logging, Inc.*, 973 F.3d at 1157, and there is no question that the CBP agent's action here did not involve a legislative or administrative decision at all. Thus, the CBP agent's failure to provide a working consulate phone number is not the kind of choice that the discretionary function exception "was designed to shield," so the exception is

inapplicable to Count VI. *See Shivers*, 1 F.4th at 929 (quoting *Gaubert*, 499 U.S., at 322-23).

### 5. Count VII – Intentional Infliction of Emotional Distress

In Count VII, the Plaintiffs assert an intentional infliction of emotional distress claim for the CBP agents' actions of "engaging in the acts described in the Complaint." (Compl. ¶ 94). This vague allegation makes it difficult for the Court to parse out whether the discretionary function exception might apply to this claim. To the extent this Count is premised on the acts analyzed in Counts I, II, III, and V, including expelling the Plaintiffs without conducting a fear screening and failure to provide the Plaintiff Mother with medical care, the Court finds that the discretionary function exception applies for the reasons explained previously. To the extent this Count is premised on the CBP agents' actions of taking the Plaintiff Mother's hospital supplies and failing to return them or failing to provide her with accurate information on how to obtain her son's birth certificate, the discretionary function exception does not apply, for the reasons explained previously. Thus, out of an abundance of caution, the Court will address the applicability of other exceptions and the Government's failure to state a claim arguments as to this Count (as well as Counts IV and VI) below.

## C. Other Exceptions

The Government argues in the alternative that Counts IV and VII are barred by the foreign country exception, that Count VI is barred by the misrepresentation exception, and that all three counts are barred by the quarantine exception.

### 1. Foreign Country Exception

The Government argues that the Plaintiffs' injuries arising from their expulsion and confinement to Mexico were suffered in Mexico. (Def.'s Mot. to Dismiss, at 22-23). The Plaintiffs argue that their injuries were suffered in the United States, so the exception does not apply. (Pls.' Resp. in Opp'n to Mot. to Dismiss, at 15-19). The FTCA provides that it "shall not apply to . . . [a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). This means that "all claims based on any injury suffered in a foreign country" are barred, "regardless of where the tortious act or omission occurred." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004).

The Court agrees with the Plaintiffs as to Count IV. In *Sosa*, the Supreme Court did not expressly address how to determine where an injury occurred in the context of the foreign country exception, but it indicated that the exception bars a claim where the tortious injury or harm at issue occurred in the foreign country. *Sosa*, 541 U.S. at 704-05. It further indicated that a cause of action "arises in the jurisdiction where the last act necessary to

establish liability occurred." *Id.* at 705. The crux of Count IV is the CBP agent's taking of the Plaintiff Mother's postpartum care supplies and the failure to return those supplies prior to her expulsion. As the Plaintiffs tell it, both of those actions took place while the Plaintiff Mother was still at the CBP facility in Texas. (Compl. ¶¶ 44-47). The last act necessary to establish liability, as the Plaintiffs frame their claim, was the CBP agent's leaving the Plaintiffs on the international bridge and instructing the Plaintiff Mother to walk towards Mexico. (*Id.* ¶ 48). Thus, because all of the acts the Plaintiffs claim result in tortious liability occurred in the United States, the foreign country exception does not bar Count IV. *See* 28 U.S.C. § 2680(k).

Count VII presents a trickier analysis because, as previously explained, the Plaintiffs did not clearly delineate which actions of the various CBP agents they interacted with form the basis of their intentional infliction of emotional distress claim. For example, while portions of the Plaintiffs false imprisonment claims arguably took place in Mexico, other alleged tortious actions, including failing to provide appropriate medical care, failing to conduct a fear screening prior to expelling the Plaintiff Mother, failing to return her hospital supplies and failing to provide accurate information on how to obtain her son's birth certificate all clearly took place in the United States. To the extent the Plaintiffs' intentional infliction of emotional distress claims are predicated on the acts that took place in the United States, the foreign country exception does

not bar them. *See* 28 U.S.C. § 2680(k). But out of an abundance of caution, the Court will address the merits of the Plaintiffs' intentional infliction of emotional distress claim below.

### 2. Misrepresentation Exception

The Government argues that Count VI is barred by the misrepresentation exception because the Plaintiff Mother claims that the CBP agent misrepresented the phone number he gave her as accurate. (Def.'s Mot. to Dismiss, at 25-27). The Plaintiff Mother argues that her claim arises out of the negligent performance of CBP's operational tasks and encompasses actions outside the traditional scope of misrepresentation as that tort is understood in the exception. (Pls.' Resp. in Opp'n to Mot. to Dismiss, at 19-22). The Court agrees with the Plaintiff Mother's second argument. The FTCA all bars all claims "arising out of . . . misrepresentation." 28 U.S.C. § 2680(h). In this context, misrepresentation means "a breach of the duty to use due care in obtaining and communicating information upon which another may reasonably be expected to rely in the conduct of his economic affairs." *Zelaya*, 781 F.3d at 1334 (quotation marks, brackets, and citation omitted). There is no allegation here that the Plaintiff Mother was relying on the information communicated to her regarding how to obtain her son's birth certificate "in the conduct of [her] economic affairs." *See id.* Accordingly, the misrepresentation exception does not bar Count VI.

### 3.  Quarantine Exception

Lastly, the Government argues that the quarantine exception bars the Plaintiffs' claims because they arise out of the application of the Title 42 Order, which related to the COVID-19 pandemic, and the order restricted the movement of people in and out of the United States "in the nature of a quarantine." (Def.'s Mot. to Dismiss, at 27-29). The Plaintiffs contend that the exception is inapplicable because the CBP agents' actions at issue in this matter were not caused by a quarantine within the meaning of the FTCA. (Pls.' Resp. in Opp'n to Mot. to Dismiss, at 22-26).

The FTCA bars "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C. § 2680(f). The Eleventh Circuit has not addressed this exception. The Fifth Circuit has interpreted the quarantine exception to apply "when a plaintiff's damages are reasonably foreseeable based on the government's decision to establish a quarantine or the government's actions imposing the quarantine." *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445, 451-52 (5th Cir. 2020). "Quarantine" is defined as "[t]he isolation of a person . . . afflicted with a communicable disease or the prevention of such a person . . . from coming into a particular area, the purpose being to prevent the spread of disease." *Quarantine*, Black's Law Dictionary (12th ed. 2024).

The Court finds the quarantine exception inapplicable to the Plaintiffs' claims. Although there is no doubt that COVID-19 is a communicable disease, the Title 42 order at issue cannot be said to be a "quarantine" as that term is commonly understood. First, the Title 42 Order did not order the isolation of individuals known to be infected with COVID-19, and instead was implemented with an overall goal of reducing transmission of COVID-19 into the United States. (Title 42 Order, at 17061). Second, and relatedly, it did not prevent persons infected with COVID-19 from entering the United States; instead, it directed the suspension entirely of aliens entering the United States from Mexico. (*Id.* at 17067). Finally, the Plaintiffs' claims do not arise from the establishment of the Title 42 Order itself, but rather from the way the CBP agents implemented the order in their particular case and associated events. For these reasons, the quarantine exception does not bar any of the Plaintiffs' claims.

## D. Failure to State a Claim

Because none of the Government's proffered exceptions to the FTCA's waiver of sovereign immunity apply to Counts IV, VI, or VII, the Court will address the Government's failure to state a claim arguments as to these claims.

### 1. Count IV – Negligence (Expulsion to Locations or into Conditions Which Placed Plaintiffs' Health and Safety at Risk)

Under Texas law, a common law negligence claim has three elements: (1) a legal duty; (2) breach of that duty; and (3) damages proximately resulting

from the breach. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W. 3d 137, 144-45 (Tex. 2022). The Government argues that the Plaintiffs only pled conclusory physical damages, which is insufficient to establish the damages element under Texas law, and that they failed to show intent, malice, or a special relationship as required to establish emotional damages. (Def.'s Mot. to Dismiss, at 38-40). The Government also asserts that the Plaintiffs have not established that they were owed any duty. (*Id.* at 39). The Plaintiffs contend that the Complaint adequately alleges that the CBP agent's actions "caused or dramatically exacerbated Plaintiff Mother's physical pain and suffering" and that they were owed a duty of reasonable care. (Pls.' Resp. in Opp'n to Mot. to Dismiss, at 38-41).

The Court agrees with the Plaintiffs that the CBP agents owed them a duty to provide appropriate medical care; indeed, at least one other court has found a duty under factually analogous conditions. *See D.A. v. United States*, 663 F. Supp. 3d 715, 740 (W.D. Tex. Mar. 23, 2023). This conclusion is supported by the fact that CBP's own policies required its agents to provide appropriate medical care to detainees. (TEDS § 4.3). In *D.A.*, a migrant detainee was taken to a hospital for treatment for a leg injury and was given crutches. *D.A.*, 663 F. Supp. 3d. at 739-40. CBP agents then confiscated the crutches and never returned them. *Id.* The court found that the CBP agents' behavior violated a non-discretionary duty to provide appropriate medical care

27

by maintaining the care that the hospital had prescribed, so the discretionary function exception did not bar the plaintiff's claim for negligence. *Id.* at 740. Under the negligence analysis, the court then found that the agent had breached its duty by confiscating the plaintiff's crutches. *Id.* The same finding is warranted here. The Plaintiff Mother was hospitalized for the birth of her son, after which she was given hospital supplies and infant formula to aid in her recovery and to care for her son. The CBP breached his duty to the Plaintiffs by confiscating the supplies, losing them, and leaving the Plaintiffs to fend for themselves without any additional medical care or supplies. The Government's argument that the Plaintiffs have failed to allege physical damages for this claim is disingenuous at best. "Unable to utilize the tools doctors provided to aid [them] in [their] recovery, [the Plaintiffs were] undoubtedly damaged by that breach." *Id.* The Plaintiffs alleged sufficient facts supporting their allegation that they suffered "physical and emotional pain and suffering" as a result of the CBP agent's breach; the Plaintiff Mother was suffering from vaginal pain and bleeding with no supplies to treat those ailments, and the two-day-old Plaintiff Son was unable to eat. (Compl. ¶¶ 45, 47-48, 79).

For these reasons, viewing the Complaint's allegations in the light most favorable to the Plaintiffs, the Plaintiffs have properly stated a negligence claim in Count IV. *Elephant Ins. Co., LLC*, 644 S.W. 3d at 144-45; *Quality*

28

*Foods de Centro Am., S.A.*, 711 F.2d at 994-95. Accordingly, the Government's Motion to Dismiss [Doc. 20] will be denied as to Count IV.

### 2. Count VI – Negligence (Failure to Provide Information on Obtaining U.S. Birth Certificate for Plaintiff Son)

As to this claim, the Government raises the same arguments that it raised against Count IV: that the Plaintiffs failed to adequately allege physical damages or make the necessary showings to establish emotional damages. (Def.'s Mot. to Dismiss, at 38-39). The Plaintiffs do not respond to this argument with regard to Count VI specifically. (*See* Pls.' Br. in Opp'n to Mot. to Dismiss, at 38-41). Under Texas law, where a plaintiff was not physically injured by a defendant's breach, she may recover damages for her mental anguish "only when: (1) the defendant acted with intent or malice; (2) a special relationship exists between the two parties; or (3) "the defendant's negligence causes a mental shock which produces a serious bodily injury". *City of Tyler v. Likes*, 962 S.W. 2d 489, 495-96 (Tx. 1997).

The Court agrees with the Government that the Plaintiffs have failed to state a claim for negligence as to Count VI. There are no allegations of physical damages arising from the CBP agent's act of providing an inaccurate consulate phone number or allegations supporting mental anguish damages with regard to this Count. In fact, even viewing the facts in the Plaintiffs' favor, it seems to the Court that the CBP agent intended to assist the Plaintiff Mother in obtaining her son's birth certificate and was unaware that the phone number

he gave was not functional. (*See* Compl. ¶ 46). The Plaintiff Mother does not allege that the CBP agent intended to deceive her or that she suffered a serious bodily injury in some way as a result of the misinformation she was given. *See City of Tyler*, 962 S.W. 2d at 495-96. The Plaintiffs do not allege that the Plaintiff Mother had a special relationship with the CBP agent that would give rise to a claim for mental anguish damages, and district courts in Texas have found no such relationship exists between a CBP agent and a detainee. *See, e.g.*, *Barry v. United States*, 667 F. Supp. 3d 495, 506-07 (S.D. Tex. Mar. 31, 2023); *Aguilar v. United States*, 2017 WL 6034652, at *3-4 (S.D. Tex. June 7, 2017). This is in accord with the Texas Supreme Court's general advisement that "most relationships, whether legal or personal, create no duty to avoid causing mental anguish." *City of Tyler*, 962 S.W. 2d. at 496. For these reasons, the Plaintiffs have failed to state a negligence claim as to Count VI because, even assuming the duty and breach elements are satisfied, they have failed to properly plead damages. Accordingly, the Court will grant the Government's Motion to Dismiss [Doc. 20] as to Count VI.

### 3. Count VII – Intentional Infliction of Emotional Distress

The Government argues that the Plaintiffs' intentional infliction of emotional distress claim fails for two reasons: first, the claim is not independent of the Plaintiffs' other claims, and second, the Plaintiffs have not established that they suffered extreme and outrageous conduct, intentionality,

or severe distress at the hands of CBP agents under Texas law. (Def.'s Mot. to Dismiss, at 33-38). The Plaintiffs contend their claim is adequately pled under Texas law. (Pls.' Resp. in Opp'n to Mot. to Dismiss, at 32-37).

In Texas, "[t]o recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W. 3d 438, 445 (Tex. 2004). "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotation marks and citation omitted). The Texas Supreme Court considers intentional infliction of emotional distress to be a "gap-filler tort" that was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447. In other words, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.*

The Court agrees with the Government that the Plaintiffs have failed to state an intentional infliction of emotional distress claim under Texas law. The Plaintiffs' claim is the epitome of the circumstance where this type of claim is unavailable. This is evidenced by the Plaintiffs' own phrasing in their Complaint referring to the CBP agents' actions of "engaging in the acts described in the Complaint" without delineating any specific actions undertaken with the express motive of causing the Plaintiffs severe emotional distress. *See id.*; (Compl. ¶¶ 94-95). Framing their claim in this way indicates that the gravamen of the Plaintiffs' complaint is really in their false imprisonment and negligence claims. Even so, the Plaintiffs have failed to allege any actions of the CBP agents that constitute "extreme and outrageous conduct" under Texas law. *See Hoffman-La Roche Inc.*, 144 S.W. 3d at 445. While the Court is sympathetic to the emotions the Plaintiffs undoubtedly endured while in CBP custody and after being expelled, the agents' actions during the Plaintiffs' detentions and expulsions—even if negligent—cannot be said to "go beyond all possible bounds of decency." *Id.* For these reasons, the Plaintiffs have failed to state a claim for intentional infliction of emotional distress and the Government's Motion to Dismiss [Doc. 20] will be granted as to Count VII.

**E. Attorneys' Fees**

Finally, the Government argues that if any of the Plaintiffs claims survive, their demand for attorneys' fees must be stricken because the FTCA does not authorize an award of attorney's fees against the United States. (Def.'s Mot. to Dismiss, at 40). The Government is correct. The FTCA does not waive sovereign immunity against the United States for claims of attorneys' fees. *Joe v. United States*, 772 F.2d 1535, 1536-37 (11th Cir. 1985). Although the Plaintiffs' attorneys may seek fees from the Plaintiffs' recovery if they ultimately prevail on their remaining negligence claim, *see id.*, they cannot seek fees directly from the Government. Thus, the Court will strike the Plaintiffs' demand for attorneys' fees from the Complaint.

## IV. Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Enlargement of the Page Limit [Doc. 23] is GRANTED. The Government's Motion to Dismiss [Doc. 20] is GRANTED in part and DENIED in part. Counts I, II, III, and V of the Complaint are DISMISSED for lack of jurisdiction. Counts VI and VII are DISMISSED on the merits. The Plaintiffs' demand for attorneys' fees is STRICKEN. Count IV remains pending.

SO ORDERED, this ___15th___ day of September, 2025.

THOMAS W. THRASH, JR.
United States District Judge

33